# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **FUAD KHALIL,** | ) | **CASE NO. 1:13cv675** |
| | ) | **Related Criminal Case No. 1:10cr529** |
| | ) | |
| **Plaintiff-Petitioner,** | ) | **JUDGE DAN AARON  POLSTER** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |

Before the Court is Petitioner Fuad Khalil's  Motion under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") **(Doc. #1** ), and the

government's opposition to the Motion (**Doc**. # **27**).  For the reasons to follow, the Motion is

**GRANTED.**

## I. Background

On December 15, 2010, the government filed an information in this Court charging

Khalil with three counts, 1) conspiracy, in violation of 18 U.S.C. 37; 2) food stamp fraud, in

violation of 7 U.S.C. 2024(b) and 18 U.S.C. 2, and; 3) unlawful food stamp redemptions, in

violation of 18 U.S.C. 2024(c) and 18 U.S.C 2.[1]  At his arraignment on January 14, 2011, Khalil

waived prosecution by indictment and pled guilty to the charges in the information.  (Doc. # 5).

---

[1]All document references, except for the instant motion, are from the criminal case, No.
1:10cr529-DAP.

1

The Court asked Khalil's lawyer if he knew of any reason why Khalil was not competent to enter a guilty plea; his attorney responded that he did not. (Arraignment Tr., Doc. # 22 at 21-22). The Court determined that Khalil was competent to enter a guilty plea, and that his decision to do so was made knowingly and voluntarily. (Arraignment Tr., Doc. # 22 at 21-22). On April 12, 2011, the Court sentenced Khalil to five months in prison, to be followed by two years of supervised release with five months of location monitoring. (Doc. # 14).

At his arraignment, the Court advised Khalil that if he was not a United States Citizen his immigration status could be affected by pleading guilty. (Arraignment Tr., Doc. # 22 at 7-8). It turns out that Khalil was born in Venezuela, immigrated to the United States with his family when he was eighteen years old, and never became a United States Citizen. (Doc. # 23 at p.1; Doc. # 23-1). As a result of his criminal conviction, after Khalil completed his prison sentence and was on supervised release, INS initiated deportation proceedings and took Khalil into custody. (Doc. # 25; Doc # 23-1).

While Khalil was in custody at a detainment facility, his immigration attorney contacted Dr. Martin because she had some concerns about his competency. Khalil does not have any immediate family members in Venezuela who can care for him. Initially, because Khalil was facing possible deportation to Venezuela, Dr. Martin planned to evaluate him to determine whether he was competent to live independently in Venezuela. However, during her evaluation of Khalil, which took place on Feb. 22, 2013, she determined that it was necessary to do a full clinical psychological evaluation, which she did. Based on her evaluation, she prepared a report in which she concluded that Khalil "should have never been deemed to be competent to proceed to trial in the first place" and that it is unlikely that he is capable of full independent living skills.

2

(Doc. # 23-1 at p. 9).

Facing possible deportation to Venezuela, on March 27, 2013, Khalil filed the instant § 2255 Petition, alleging that his trial attorney was ineffective.  Specifically, Khalil alleges that when he pled guilty he was mentally incompetent and, therefore, his trial attorney was ineffective for failing to investigate his mental health background and for failing to request a competency hearing.  Khalil included a copy of  Dr. Martin's report with his § 2255 Petition. After Khalil filed his § 2255 Petition, the Court, with the consent of the parties, ordered a full psychiatric competency evaluation of Khalil.  (Doc. # 25).  Dr. Nieberding of the Bureau of Prisons evaluated Khalil and prepared a report based on his evaluation.

On October 1, 2013, after reviewing both reports, the Court held a competency hearing, which featured testimony from the following individuals: Khalil's trial attorney, David Levine; the agent who investigated the underlying criminal charges against Khalil, Special Agent Randy Battistoni; and Drs. Martin and Nieberding.  At the competency hearing, Drs. Martin and Nieberding did not agree on the extent to which Khalil had a rational understanding of the proceedings when he plead guilty.   However, they agreed that Khalil did not have the mental capacity to meaningfully assist his trial counsel with his defense.

## II. Standard of Review

Under 28 U.S.C. § 2255, a federal district court may grant relief to a prisoner in custody under a sentence imposed by that court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." *Id.*  To prevail on a § 2255

3

claim, the petitioner must allege either "1) an error of constitutional magnitude; 2) a sentence imposed outside the statutory limits; or 3) an error of fact or law that was so fundamental to render the entire proceeding invalid." *Short v. United States,* 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States,* 334 F.3d 491, 496-97 (6th Cir. 2003).

### III. Statute of Limitations

Khalil filed his § 2255 Petition after the one-year limitations period.  Khalil was sentenced on March 27, 2011.  Because Khalil did not appeal his sentence, the one-year period he had to file a § 2255 Petition commenced 10 days after the Court's March 27, 2011 judgment. *See Sanchez-Castellano v. United States,* 358 F.3d 424, 426 (6th Cir. 2004); 28 U.S.C. 2255(f)(1).

Khalil admits that his § 2255 Petition is untimely, but argues that he is entitled to equitable tolling because he was incompetent when he pled guilty.  A petitioner is entitled to equitable tolling only if he can demonstrates that 1) he has been diligent in pursing his rights and 2) an extraordinary circumstance caused his untimely filing.  *Hall v. Warden,* 662 F.3d 745, 749 (6th Cir. 2011)(*citing Holland v. Florida,* 130 S.Ct. 2549 (2010)).  The Sixth Circuit has held that mental incompetence or incapacity is an extraordinary circumstance that  may provide a basis for equitable tolling if the petitioner can show that 1) he is mentally incompetent and 2) his mental incompetence caused his failure to comply with the one-year limitations period.  *Ata v. Scutt,* 662 F. 3d 736, 742 (6th Circ. 2011) ("In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations.  Rather, a causal link between the mental condition and untimely filing is required.")

As discussed further below, the Court finds that Khalil was mentally incompetent when

4

he pled guilty.  Before Khalil filed the instant § 2255 Petition, there was nothing in the record in the underlying criminal case to suggest that Khalil was incompetent.  Presumably, Khalil did not know that he was incompetent until Dr. Martin evaluated him in February 2013, and, as a result, could not have filed a § 2255 Petition on this basis within the one-year limitation period.  Furthermore, Khalil has been diligent in pursuing his rights.  Khalil filed the instant § 2255 Petition in March 2013, approximately one month after Dr. Martin had determined that Khalil was incompetent when he pled guilty.  Under these facts, the Court finds that Khalil is entitled to equitable tolling.

### IV. Competence to Plead Guilty

The standard for competence to plead guilty is the same standard for competence to stand trial.  *Godinez v. Moran,* 509 U.S. 389, 389-390 (1993) ("[W]e reject the notion that competence to plead guilty ... must be measured by a standard that is higher than (or even different) from the [trial] standard.").  A defendant is competent to plead guilty if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."  *Id.* at 397 (citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788 (1960).  In sum, the standard aims to "ensure that [a criminal defendant] has the capacity to understand the proceedings and to assist counsel."  *Id.* at 402.

Dr. Nieberding testified that he thinks there is a distinction between mental capacity to plead guilty and mental capacity to stand trial.  Dr. Nieberding testified that the "level of complexity" is higher for trial and "when you look at competency as a general concept you have to do it at that level."  However, as noted above, the Supreme Court rejected such a distinction.

5

In *Godinez,* the Supreme Court held that because a "defendant who stands trial is likely to be presented with choices that entail relinquishment of the same rights that are relinquished by a defendant who pleads guilty," the same standard applies to both competence to plead guilty and to competence to stand trial.  *Godinez,* 509 U.S. 389, 389-390.

Upon review of the record, the Court finds that because Khalil most likely did not have the mental capacity to assist his trial counsel with his defense, he was not competent to plead guilty.  Drs. Martin and Nieberding  testified that when Khalil was charged in the underlying criminal case, he was unable to  meaningfully assist his counsel with his defense.  (Doc. # 29, ("Comp. Hrg. Tr." at 62; 63-64; 87-88)).

Dr. Martin testified that Khalil lacks abstract reasoning and his comprehension level is "extraordinarily superficial and minimal," as evidenced by his inability to provide anything more than superficial answers to questions.  (Id. at 48).   For instance, Dr. Martin testified that when she asked Khalil about the judge's role, he responded "it is to decide if I'm guilty", but could not tell her how the judge decides guilt, or provide her with anything beyond "parroting back a basic understanding."  (Id).  Dr. Martin testified that as a result of Khalil's limited comprehension level, it is unlikely that he will ever be able to "challenge any member of his defense team ...or keep up with any of the meaning behind statements that are made in court."[1]  (Id).  Dr. Martin

---

[1]  While Dr. Martin's testimony often refers to Khalil's current intellectual limitations, she testified that her report is based on Khalil's mental competence when he plead guilty.  (Doc. 29 at 69).  Furthermore, Dr. Martin testified that because Khalil suffers from a "standing defect", rather than a mental incapacity that is situational, it does not matter that he was evaluated almost more than two years after he plead guilty.  (Doc. 29 at 69).  Similarly, Dr. Nieberding testified that Khalil's intellectual deficits have been with him for some time, and that his ability to process information has probably not improved over the last two to three years.  (Comp. Hrg. Tr. at 88-89).

explained that Khalil's intellectual limitations prohibited him from assisting counsel with his

defense:

> [W]hile [Khalil] can answer questions A, B, C and D, he is never going
> to get an alphabet out of that.  He is never going to synthesize those things
> in a meaningful enough way to assist in his own defense.  He is not going
> to be able to challenge information by anyone perceived as an authority.
> He is not going to be able to contradict his attorneys.  He is probably going
> to ask his attorney, 'What do you think I should do,' and then he is going to
> do that without question.  He doesn't have to capacity to do more than that.

(Comp. Hrg. Tr. at 63-64).

During the competency hearing, Dr. Martin repeatedly testified that because Khalil lacks

the mental capacity to make his own decisions, he relies on his family and attorney to make

decisions for him.  For instance, she explained to the Court how Khalil could have had a "basic

understanding" that it was illegal to sell food stamps for cash, and, nonetheless, lacked the

mental capacity to make his own decision about whether or not to engage in such behavior.  Dr.

Martin testified that because Khalil lacks the mental capacity for reasoning he is "going to go

with whatever is around him, what he is told is okay by the people he sees as being authority,

and that is going be family members, other store works who he perceives as being smarter or

more experienced than he is.  Those things are far more meaningful."  (Id. at 50).[2]

Dr. Nieberding's testimony regarding Khalil's mental capacity  to assist counsel with his

defense is consistent with Dr. Martin's.  During the competency hearing,  Dr. Nieberding read a

---

[2]  See also, Comp. Hrg. Tr. at 71-72.  When the Court asked Dr. Martin if Khalil
understood that it was illegal to sell food stamps for cash, but that if his brother said "I
want you to do it," he would just do it, she answered that he would sell food stamps for
cash because  "he is going to obey [his family members] or go with their suggestions
with very little regard to question it.  He doesn't question his attorneys.  He doesn't
question any professionals around him."

portion of his report in which he discussed the results from a test that he administered to Khalil, the "Evaluation of Competency to Stand Trial" ("ECST-R") test.  Dr. Nieberding testified that "the results from the ECST-R further indicated [that Khalil] may encounter some difficulties regarding his ability to assist counsel...[w]hen asked to discuss the strategy for resolving potential disagreements with counsel, he stated 'I don't know too much about the law.  I usually let other people pick what to do.'" (Id.  at 84-85).  Dr. Nieberding testified that while Khalil "understands things on a basic and concrete and fundamental level" he struggles to understand things that are "complicated and abstract," and as a result of his intellectual deficit, it is unlikely that he was able to assist counsel with his defense when he plead guilty.  (Id. at 86-87).

Drs. Martin and Nieberding disagree about the extent to which Khalil had a rational understanding of the proceedings when he plead guilty.  In her report, Dr. Martin concluded that Khalil's limitations in complex reasoning " significantly impaired his ability to completely understand or appreciate the full repercussions of sentencing or plea bargains."  (Doc. # 21-1 at p. 9).  Dr. Martin testified that Khalil lacked the ability to make rational decisions, including the decision to plead guilty or go to trial, because he is unable to engage in rational thinking.

> The Court: You think he could not make a rational decision whether or not to plead guilty or go to trial?
> The Witness: No, Sir, I don't.
> The Court: Is that what you're saying?
> The Witness: Because rational decisions are made through rational thinking, and that involves being able to weigh information in a way that weighs the potential consequences to one's self, the potential difference in sentences. No, sir. I don't he can make that rational decision.

(Id. at 86).  Dr. Nieberding testified that "Khalil maintained ... a factual and rational understanding of the proceedings."  (Id. at 86).  When the Court asked Dr. Nieberding if Khalil had the intellectual mental capacity to understand the difference between pleading guilty and

going to trial, Dr. Nieberding testified that "on a very fundamental level, very concrete level, he might be able to understand that distinction...[b]ut as I said, I have reservations that Mr. Khalil could effectively assist because of [his] cognitive deficits."(Id. at 93).

For a defendant to be competent to plead guilty, he has to be able to assist counsel and understand the proceedings before him. *Godinez,* at 402; *see also McGee v. Redman,* 914 F.2d 257, at *4 (6th Cir. 1990) (unpublished opinion) ("The ability to assist one's lawyer ...forms the touchstone for competence.") Therefore, even if Khalil maintained a factual and rational understanding of the proceedings, because it is unlikely that he was unable to assist his attorneys with his defense, he was not mentally competent to plead guilty.

### V. " Knowing and Voluntary" Standard

In addition to "finding that a defendant is competent to stand trial ... before he may be permitted to plead guilty[,] ... a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Godinez,* 509 U.S. at 400. In *Godinez,* the Supreme Court explained the distinction between the competence requirement and the "knowing and voluntary" requirement. *Id.* at fn. 12. The Court explained that "[t]he focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.*

Here, Khalil's guilty plea was not "knowing and voluntary." To have the mental capacity to make an intelligent decision to plead guilty, one must be able to have a discussion with counsel regarding the government's evidence, trial strategy and possible defenses. Otherwise,

there is not a rational basis to make the decision on whether to plead guilty or go to trial.  Both

doctors agreed that Khalil did not have the mental capacity to have such a discussion.  See, e.g.,

Comp. Hrg. Tr. at 62-63 (Dr. Martin testified that she agreed with Dr. Nieberding's conclusion

that Khalil's cognitive limitations precluded him from meaningfully contributing to a discussion

regarding legal strategy).  Furthermore, despite testifying that Khalil might have had the capacity

to understand the difference between pleading guilty and going to trial, Dr. Nieberding testified

that he is not sure whether Khalil made an intelligent decision to plead guilty.  (Id. at 93-94).

### VI. Counsel's Failure to Investigate and Request a Competency Hearing

Ineffective assistance of counsel claims are analyzed under the standard enunciated in

*Strickland v. Washington,* 466 U.S. 668 (1984).  To prevail on an ineffective assistance of

counsel claim, Petitioner must establish two elements:  (1) counsel's performance fell below an

objective standard of reasonableness, and (2) there is a reasonable probability that but for

counsel's deficiency, the outcome of the proceedings would have been different.  *Griffin v.*

*United States,* 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 689).

Defense counsel has the "duty to make reasonable investigations or to make a reasonable

decision that makes particular investigation unnecessary.  In any ineffectiveness case, a

particular decision not to investigate must be directly assessed for reasonableness in all the

circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466

U.S. at 691, 104 S.Ct. 2052.   As to the duty to request a competency hearing, when evidence of

a defendant's mental state raises doubt as to his competence, due process requires a competency

hearing.  *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).  Counsel's

failure to request a competency hearing may amount to ineffective assistance of counsel

"provided there are sufficient indica of incompetence to give objectively reasonable counsel reason to doubt the defendant's competence" *Jermyn v. Horn,* 266 F.3d 257, 283 (3d cir. 2001).

Mr. Levine represented Khalil in criminal and civil matters beginning in 2005.  Mr. Levine testified that he had no reason to doubt that Khalil was competent to plead guilty. (Comp. Hrg. Tr. at 7-8).   Mr. Levine testified that on numerous occasions he discussed the charges in the underlying criminal case with Khalil, and he thought Khalil understood these discussions.  (Id. at 11-12).  Dr. Martin's testimony indicates that Mr. Levine was not alone in assuming that Khalil was incompetent.   Dr. Martin testified that "a lot of people have made assumptions about [Khalil's] level of understanding, assuming that his English is challenged but that his understanding is not" and that Khalil "presents with a slightly irregular presentation, which I think is part of why he is not being detected or hasn't been detected as intellectually disabled up to this point."  (Id. at 58-89).  However, as Khalil's lawyer, Mr. Levine should have, at the very least, investigated whether Khalil was competent to plead guilty.

As noted above, Drs. Martin and Nieberding testified that Khalil did not have the mental capacity to have discussions with his lawyer regarding legal strategy.  Therefore, Khalil's inability to engage in these discussions with Mr. Levine should have caused him to question whether Khalil was mentally competent to plead guilty.  While he acted in good faith, the Court concludes that Mr. Levine failed to appreciate his client's severe mental limitations.

As to the prejudice prong of *Strickland,* Khalil was clearly prejudiced by Mr. Levin's failure to investigate his mental health background.  If Mr. Levine had investigated Khalil's mental health prior to Khalil's guilty plea, and informed the Court of his investigation, then the Court could have held a competency hearing at that time to determine whether Khalil was in fact

11

competent to plead guilty.  Presumably, the Court would have found that Khalil was not competent to plead guilty, as it now does, and Khalil would not have been sentenced to five months in prison, and would not be facing possible deportation to Venezuela.  *See Becton v. Barnett,* 920 F.2d 1190, 1194 (4th Circ. 1990) (holding that the petitioner was prejudiced by his trial counsel's failure to investigate whether he was mentally competent to stand trial, because had counsel taken reasonable steps to investigate, a hearing could have been held on the issue of his competence, and a determination could have been made that the petitioner was not competent to stand trial).

## VII. Conclusion

Accordingly, for the reasons above, Khalil Fuad's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody **(Doc. # 1)** is hereby **GRANTED.**   Accordingly, the plea and conviction are vacated, and Khalil shall be discharged from immigration detention.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster 11/20/13*
**Dan Aaron Polster**
**United States District Judge**

12